## MEULENBERGH v. COE et al.

(Supreme Court, Special Term, New York County. May, 1916.)

1. MECHANICS' LIENS ⬳281(3)—ACTION TO ENFORCE—SUFFICIENCY OF EVIDENCE.

In an action to foreclose a mechanic's lien for the alteration and repair of a building, evidence *held* not to sustain defendants' contention that the cost of the work was not to exceed $10,500.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 570; Dec. Dig. ⬳281(3).]

2. CONTRACTS ⬳295(1)—PERFORMANCE—IMMATERIAL OMISSION—EFFECT.

Under a contract for the alteration and repair of buildings, including excavations, concrete foundations, walls, walks, and flooring, the ripping of partitions and the building of new partitions, the building of a new front, etc., the omission to put in a 6-inch plaster partition inclosing the stairs in the basement was of so slight or unsubstantial character as not to affect the contractor's right of recovery.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1353, 1356, 1362; Dec. Dig. ⬳295(1).]

3. CONTRACTS ⬳198(2)—PERFORMANCE OF WORK—CONSTRUCTION CONTRACT—MUNICIPAL VIOLATIONS.

Under a contract for the alteration and repair of buildings, requiring the contractor to obtain all permits and pay therefor, and to comply with all building and sanitary laws, and making him responsible for any violations, whether caused by omission in the plans or not, he was not bound to procure the dismissal of violations filed by the building department, due to the architect's failure to file proper plans to cover additional work, or those filed by the water department after the completion of the work, by reason of defendant's acts in causing back pressure.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 862–865; Dec. Dig. ⬳198(2).]

4. CONTRACTS ⬳284(3)—PERFORMANCE—ARCHITECT'S CERTIFICATES.

Under a contract for the alteration and repair of buildings, which called for monthly payments covering a certain percentage of the work done, subject to additions, etc., and providing that upon the architect's certificate the final payment should be made within 90 days from the completion of the work, and should be due when certificates therefor were issued, the architect's refusal to issue a final certificate after the substantial completion of the work was unreasonable, and excused its nonproduction as a condition to payment.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1314–1316; Dec. Dig. ⬳284(3).]

5. CONTRACTS ⬳229(2)—CONSTRUCTION—CHARGES FOR SUPERINTENDENCE—REBATE.

Under a contract for the alteration and repair of buildings, providing that the "contractor should receive 10 per cent. of the cost of labor, material, superintendence, and expenses by himself" and 5 per cent. of the cost of any work done by his or other subcontractors, the contractor was

entitled to compensation upon the cost of all labor performed by his workmen and superintendents and foreman employed upon his own account and expenses incident thereto, and hence was not entitled to a charge for the time expended by him in superintendence when that was being done by his own superintendents, nor to charges of 10 per cent. upon items of work performed by third parties under arrangements with him, where such parties, though having no written contracts, were in fact subcontractors, nor to an amount received from a subcontractor as a rebate without defendant's consent.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1046; Dec. Dig. ☜229(2).]

6. CONTRACTS ☜287(2)—CONSTRUCTION—CHARGES—ESTOPPEL.

Under such contract, providing that no certificate of the architect or any payment under the contract, except the final certificate of payment, should be conclusive evidence of the performance of the contract, the defendant was not estopped by the architect's monthly certificates from questioning the propriety of charges which had been allowed thereby, where it appeared that neither the architect nor the defendant knew that such charges had been allowed.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1326, 1329, 1330, 1340–1342, 1344–1346; Dec. Dig. ☜287(2).]

7. MECHANICS' LIENS ☜139(3)—ENFORCEMENT—SUFFICIENCY OF NOTICE.

Under Lien Law (Consol. Laws, c. 33) § 9, subd. 4, requiring that the notice of lien shall state the labor performed or material furnished and the agreed price or value thereof, and section 23, declaring that the article shall be construed liberally, a notice of lien stating that the labor performed was in altering and decorating premises at a certain street and number for the purpose of use and occupancy as a restaurant and as a furnished room house, that materials furnished were building materials used in such work, and that the materials furnished and the labor performed were furnished and performed under a written contract to do such work, was sufficient.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 236; Dec. Dig. ☜139(3).]

Action to foreclose a mechanic's lien by Emil C. Meulenbergh against William S. Coe, Lucien Bilquez, and others. Judgment for plaintiff, with leave to the parties to submit requests.

Arthur Furbur, of New York City, for plaintiff.

Jonas, Lazansky & Neuberger, of New York City (Edward Lazansky and Joseph P. Tolins, both of New York City, of counsel), for defendant Bilquez.

GIEGERICH, J. The action is to foreclose a mechanic's lien. The owner of the property, the defendant Coe, has made default in appearing and answering. The defendant Bilquez, the lessee of the premises, is the only one who defends the action. Various lienors have appeared and made proof of their respective claims. On or about May 10, 1915, the plaintiff and the said defendant Bilquez entered into a contract for the "erection, alteration, shoring, and repairing of work in general, in houses Nos. 158–160 W. Forty-Fifth street, New York City, of all excavation, concrete foundations, walls, walks and flooring, shoring of front walls, ripping of partitions, building new partitions, building new front, new marquis, new iron stair, new cellar and service stairs, new chimney, new addition for service stairs, new plumbing and fixtures,

new electric work and repairs, painting and papering, metal work, plaster work, etc., and as may be necessary." The work consisted of altering the buildings in question for the purposes of a restaurant, café and furnished room house to be conducted by the said defendant. The work was done under what is known as a percentage contract, the contract, among other things, providing:

"All payments shall be made to the contractor between the 1st and 5th of each month during the work. The contractor shall receive 10 per cent. of the cost of labor, material, superintendence and expenses by himself, and he shall receive 5 per cent. of the cost of all and any work done by his or other subcontractors. Monthly payments shall amount to 60 per cent. of the work done by all contractors and himself during that month."

[1] The written contract is silent as to the cost of the work, but the defendant contends that it was not to exceed $10,500, which the plaintiff denies. In support of his contention the defendant quotes the letter of the plaintiff to him. Such letter was received by the defendant on May 15, 1915, and reads as follows:

"It is understood and agreed between both parties in this contemplated contract that the work contemplated on at this time is not to exceed a figure of $10,500."

The evidence satisfies me that the letter in question was sent to the defendant in order that he might procure a bond of a surety company which had theretofore refused to issue one, owing to the uncertainty of the cost of the work, and that the plaintiff was requested to examine the building with a view of getting an approximate idea of what the job would cost if certain features of the work shown on the plans were eliminated. In this connection the plaintiff testified—which testimony I believe—that:

"Mr. Bilquez said he had not been able to obtain a bond from any bonding company owing to the peculiar conditions of the contract; that the job was to be on a percentage basis, and the bonding company could not tell whether the job would cost $1 or $10,000, so he asked me to go to the building and get an approximate idea of what the job would cost. I offered to write Mr. Bilquez that if certain things which he had spoken of were to be omitted from the plans, and other changes which he contemplated would be made, the job probably would be cheaper. 'Can you write that to the bonding company?' and I wrote this letter to Mr. Bilquez. He then took it to the bonding company or the brokers to obtain a bond. We started work after he obtained a bond."

The defendant concedes that at the time of the receipt of that letter the parties contemplated the performance of some work in addition to that called for by the contract. The specifications expressly provide for additional work in the following language:

"The owner reserves the right at any time to make any addition or deviation from work contemplated or any part or parts thereof as covered by plans and specifications."

The evidence shows that during the performance of the work various changes were made in the plans and specifications, and additions were made thereto with the consent of the defendant, which greatly enhanced the cost of the work. All this goes to show that the parties did not agree

upon a maximum price for the work, and after consideration of all the evidence I am of the opinion that the contention of the defendant that the cost of the work was not to exceed $10,500 is not supported by the evidence.

The defendant maintains that the work was not completed until some time in October, 1915, or less than 90 days prior to the commencement of the action. I do not agree with such contention, but find, on the contrary, that the plaintiff substantially completed the work required of him on August 30, 1915, and that on said date the defendant accepted the work, and received from the plaintiff the keys of the premises and went into possession, and has ever since remained in possession thereof.

[2] It is further claimed by the defendant that the plaintiff entirely omitted to put in a 6-inch plaster partition inclosing the stairs in the basement, which he claims that, according to the plans, the plaintiff was required to do. New plans in place of those filed in May, 1915, were filed on October 4, 1915, and approved by the building department. It is claimed by the defendant that partitions are shown on such new plans. It appears that the work has been approved by the proper departments without the partition in question, and the architect does not remember whether he ever called the plaintiff's attention to the omission of such partition. Although an effort was made upon the trial by the defendant to prove the cost of the erection of a partition of the character mentioned, he failed to do so. The plaintiff's main and reply briefs do not make any mention of this point, and I have been unable to discover any direct testimony in behalf of the plaintiff in the stenographer's minutes with respect thereto. Even if the plaintiff was under obligation but has omitted to erect such partition, I think, in view of the circumstances, the omission must be held to be immaterial and of such a slight or unsubstantial character as not to affect the plaintiff's right of recovery. Nolan v. Whitney, 88 N. Y. 648; Crouch v. Gutmann, 134 N. Y. 45, 31 N. E. 271, 30 Am. St. Rep. 608; 6 Cyc. 57. All the more should it be so held in this case, where the work, if done, would have been done at the defendant's expense, and the plaintiff has not gained by the omission, but has lost the commission that he might have earned. The defendant further urges that the coal chute was never properly finished, although, as claimed, alterations were made on it some time after October 6, 1915. This is denied by the plaintiff, and I am inclined to give credence to his contention that the coal chute was properly finished on August 30, 1915, and that if any work was thereafter performed on it, it was done only to satisfy the defendant.

[3] The defendant claims, furthermore, that the plaintiff failed, until October, 1915, to procure the dismissal of so-called violations filed by the building department, and that work necessary to remove a violation filed by the department of water supply, gas, and electricity in connection with the water meter was not done until October, 1915. So far as the violations filed by the first-mentioned department are concerned, the evidence shows that they were occasioned by the failure of the architect to file proper plans to cover additional or extra work which he had ordered without having first obtained the authority of such department to make such changes, and that those violations were

removed when plans showing such additional or extra work were filed. The evidence further satisfies me that a violation was put upon the premises by the last-mentioned department after the completion of the work in consequence of the act of the defendant, whereby a back pressure was caused, but which was obviated later by putting a check valve on one of the water meters. According to the specifications the plaintiff is required to obtain all permits and pay for the same, and to comply with all building and sanitary laws, and he is held responsible for any violations for the same, whether caused by omission on the drawings or not, but neither the contract nor the specifications require him to remove any violations. I do not think, under the circumstances above detailed, it was the plaintiff's duty to remove such violations.

[4] The defendant also contends that since the plaintiff has failed to procure the architect's final certificate for a final payment, he is not entitled to recover. Article 9 of the contract in part provides as follows:

"It is hereby mutually agreed between the parties hereto that the sums to be paid by the owner to the contractor for said work and material shall be subject to additions and deductions as hereinbefore provided, and that such sums shall be paid by the owner to the contractor in current funds, and only upon certificates of the architect."

Then follows the provision above quoted for payments. Article 9 of the contract further provides that:

"The final payment shall be made within 90 days after the completion of the work included in this contract, and all payments shall be due when certificates for the same are issued."

The architect refused to issue a final certificate under the instructions of the defendant. As such refusal was made after the work had been substantially completed by the plaintiff, the refusal to give such final certificate was unreasonable, and its nonproduction, under the circumstances, is excused. Nolan v. Whitney, supra; Crouch v. Gutmann, supra; Bowery Nat. Bank v. Mayor, 63 N. Y. 336. The plaintiff is therefore entitled to recover the aggregate of the various sums mentioned in the statements dated June 1, July 1 and 31, and August 31, 1915, respectively, submitted by him to the architect in order to obtain his certificates for monthly payments, after deducting all sums paid on account, without first procuring such final certificate, unless the objections urged by the defendant against certain items included in said monthly statements are held not to be well taken.

[5, 6] The first of such objections is to items in the pay rolls of the plaintiff aggregating $550.80 for the time spent by him upon the job in superintending the work. The plaintiff insists that he is entitled to such items under the following provision of the contract:

"The contractor shall receive 10 per cent. of the cost of labor, material, superintendence and expenses by himself."

In my opinion the words in question are not susceptible of the interpretation the plaintiff's counsel seeks to put upon them. A fair and just construction of such provision is that the plaintiff is entitled to compensation at the rate of 10 per cent. upon the cost of all labor

performed by his workmen and superintendents and foremen employed by him to superintend their work, material used on the job, where the work is done upon his own account and not by subcontractors, and expenses incident to and in furtherance of the work. This view is strengthened by the words which immediately follow those above quoted. These are:

"And he shall receive 5 per cent. of the cost of all and any work done by his or other subcontractors."

This difference in the percentages of compensation indicates that the parties intended to provide for just such a situation as is here presented, for they undoubtedly took into consideration the fact that in performing work upon his individual account by workmen employed by him, the plaintiff assumed a personal risk and responsibility, thus entailing watchfulness and care on his part, and that more of his time would be taken up in supervising it than work performed by subcontractors. It was, however, not within the reasonable contemplation of the parties that the plaintiff should devote all his time exclusively to the superintendence of the work which was being performed by his own workmen, as he claims he did, because he was also required to supervise the work which was being done by subcontractors. He could not do both at the same time without neglecting some of the work he was required to perform. This undoubtedly was taken into consideration by the parties when they agreed that the plaintiff should receive 10 per cent. of the cost, among other things, of "superintendence." They intended by the use of such word that the plaintiff might employ and charge for the services of a person to superintend the job, and this is what he practically did. According to Plaintiff's Exhibit No. 129 he employed a foreman, for whose services he charges $437.93 for "straight" time, and $35.07 for "over" time, amounting in all to $473. This is only $77.80 less than the plaintiff's charge for his own time, which is made up as follows: $472.40 for "straight" time and $78.40 for "over" time, amounting altogether to $550.80. Such exhibit further shows that all told 35 workmen were at various times also employed on the job, exclusive of 2 night watchmen and a Sunday watchman.

The plaintiff argues that since he gave the defendant the benefit of his personal experience in performing the work himself instead of employing another superintendent to oversee the job he should be compensated for his services as superintendent at the usual rate paid on similar jobs. The answer to all this is that the plaintiff was bound by the terms of his contract to perform the very services for which he asks "wages" or compensation, and that his compensation therefor was not to be that of a superintendent of similar work, but was to be computed upon a percentage basis, which in the present case, as hereafter shown, amounts to about $1,100.

The plaintiff further urges that the architect told him that he was entitled to charge for his own time on the job in addition to the percentage due him, and that a charge was made therefor in each of the monthy requisitions submitted to and allowed by the architect, who issued certificates that such charges were correct, and that payments

have been made thereon, and that the defendant is therefore estopped from questioning the propriety of such charges. Article X of the contract provides:

"It is further mutually agreed between the parties hereto that no certificate given or payment made under this contract, except the final certificate or final payment, shall be conclusive evidence of the performance of this contract, either wholly or in part, and that no payment shall be construed to be an acceptance of defective work or improper materials."

As I construe the foregoing article the plaintiff is not estopped by the certificates of his architect from questioning the propriety of the charges so objected to. The architect, as well as the defendant and his son, all testified that they did not know that the plaintiff had included his own time under the pay roll items. The defendant and his son further gave testimony to the effect that they were never consulted by the architect about such charges and that they never consented to its payment. Even if the architect did agree to allow such charges, I do not think he had any authority to do so without the consent of the defendant. From what has been said above it is clear that the plaintiff is not entitled to the charge for his wages as superintendent amounting to $550.80, nor to the 10 per cent. on that sum, amounting to $55.08, which he has also included in his account against the defendant. These sums, aggregating $605.88, must therefore be deducted.

Items amounting in all to $410.48, claimed to have been expended by the plaintiff for materials used by his workmen on the job, are objected to on the ground that the plaintiff did not expend such sum, but that he only expended the sum of $189.60. These items are embraced within the monthly statements which were submitted to the architect for the purpose of obtaining his certificates entitling the plaintiff to monthly payments under the contract. After consideration of all the evidence I am satisfied that the entire sum so charged was actually expended and should be allowed to the plaintiff.

The plaintiff has charged at the rate of 10 per cent. upon certain items where the work was performed by third persons under an arrangement with the plaintiff. Such charge is sought to be justified upon the theory that the plaintiff engaged them, without entering into a written contract and without an agreement as to the price, to do certain kinds of work which his workmen were unable to perform, and that hence they were not subcontractors. With this contention I cannot agree. The persons so engaged were subcontractors, even though there was no written contract nor fixed price for the work. According to the terms of the contract the plaintiff is entitled to compensation at the rate of 5 per cent. of the cost of all work performed by his or other subcontractors, and the defendant is therefore entitled to a reduction of 5 per cent. on the sums set opposite the following named persons or concerns, the amount deducted appearing in the last column, viz.:

| | | |
|---|---:|---:|
| G. Bickelhaupt Skylight Works | $ 16.00 | $ 0.80 |
| Casemento Roofing Company | 60.00 | 3.00 |
| O. Monsen | 108.18 | 5.40 |
| P. A. Penington | 595.00 | 29.75 |
| Totals | $779.18 | $38.95 |

The plaintiff, without the knowledge or consent of the defendant, received from the said P. A. Penington, a subcontractor, a rebate of $24.38 when he made the final payment to him. It requires no argument to show that this sum should also be deducted from the amount claimed by the plaintiff. The said sums of $605.88, $38.95 and $24.38 which I have found should be credited to the defendant amount in the aggregate to $669.21. During the progress of the work statements were rendered monthly by the plaintiff to the architect, who, in reliance upon the same, issued certificates in order to enable the plaintiff to obtain monthly payments. A supplemental statement, dated October 1, 1915, was also rendered. Except as above noted I have found the statements so rendered to be correct, and for the purpose of showing the situation between the parties a summary of such statements is herewith given:

Moneys Expended by the Plaintiff for Work, Materials, Superintendence and Other Expenses, with 10 Per Cent. Added.

| Date of Statement. | Amount. | 10 Per Cent. | Total. |
|---|---|---|---|
| June   1, 1915.......................... | $ 527.99 | $ 52.80 | $ 580.79 |
| July   1, 1915.............................. | 1,943.46 | 194.35 | 2,137.81 |
| July 31, 1915.............................. | 1,687.07 | 168.70 | 1,855.77 |
| Aug. 31, 1915.............................. | 2,727.73 | 272.77 | 3,000.50 |
| Oct.   1, 1915.............................. | 40.12 | 4.01 | 44.13 |
| Bill of P. J. Martin, Inc., for broken glass (no percentage is charged on this item).......... | 4.75 | .... | 4.75 |
| | $6,931.12 | $692.63 | $7,623.75 |

Subcontractors' Account, with 5 Per Cent. Added.

| Date of Statement. | Amount. | 5 Per Cent. | Total. |
|---|---|---|---|
| June   1, 1915.............................. | $ 250.00 | $ 12.50 | $ 262.50 |
| July   1, 1915.............................. | 2,289.60 | 114.48 | 2,404.08 |
| July 31, 1915.............................. | 2,736.20 | 136.81 | 2,873.01 |
| Aug. 31, 1915.............................. | 2,971.37 | 148.57 | 3,119.94 |
| | $8,247.17 | $412.36 | $8,659.53 |

The aggregate of these two accounts with which the plaintiff is to be credited is as follows:

| | |
|---|---|
| Plaintiff's account of moneys expended by him for labor, material, superintendence and other expenses, including 10%............ | $ 7,623.75 |
| Percentage (10%) omitted from statement of October 1, 1915, on bill of $4.75........................................ | .47 |
| Subcontractors' account, including 5%......................... | 8,659.53 |
| | $16,283.75 |
| Paid on account......................................... | 9,740.64 |
| | $ 6,543.11 |

Deduct—

| | | |
|---|---|---|
| For credit as per statement of October 1, 1915............ | $ 35.88 | |
| For items in plaintiff's statements disallowed by the court.. | 644.83 | |
| For rebate received by plaintiff from W. A. Penington, a subcontractor ...................................... | 24.38 | |
| | | 705.09 |
| Balance due plaintiff................................. | | $ 5,838.02 |

Stated in another form, the sum total of the credits to which the plaintiff is entitled is $15,638.92, and he is chargeable with $9,800.90, leaving a balance in his favor of $5,838.02.

[7] The remaining question is whether the notice of lien filed by the plaintiff is valid. The defendant urges that it is invalid because it does not state the nature of the labor performed and the materials furnished. The notice of lien, among other things, states that:

"The labor performed was in altering, making over and decorating the premises known as Nos. 158 and 160 West Forty-Fifth street, in the borough of Manhattan, in the city and county of New York, for the purposes of use and occupation as a restaurant and café and furnished rooms, and materials furnished were building material used in and about said work. That the labor performed and the materials furnished were performed and furnished under a written contract to do the work and furnish the material pursuant to drawings and specifications filed with the building department. * * *"

Section 9, of the Lien Law, so far as applicable to the point so raised, requires that the notice of lien shall state:

"4. The labor performed or to be performed, or materials furnished or to be furnished, and the agreed price or value thereof."

Section 23 of the same act provides:

"This article is to be construed liberally to secure the beneficial interests and purposes thereof. A substantial compliance with its several provisions shall be sufficient for the validity of a lien and to give jurisdiction to the courts to enforce the same."

The court in Waters v. Goldberg, 124 App. Div. 511, 512, 108 N. Y. Supp. 992, 993, construing these provisions, said:

"That the statute is to be construed liberally, and the question of the validity of the notice turns upon substantial compliance with its provisions, with the limitation that this rule cannot be applied so far as 'to entirely dispense with what the statute says the notice shall contain.'"

The latter part of the foregoing quotation is taken from the opinion of the court in Mahley v. German Bank, 174 N. Y. 499, 500, 67 N. E. 117, where the notice of lien did not contain any statement whatever as to the kind of labor performed and materials furnished. This was also the case in Toop v. Smith, 181 N. Y. 283, 73 N. E. 1113, Ball v. Doherty, 144 App. Div. 277, 128 N. Y. Supp. 1014, and Fanning v. Belle Terre, 152 App. Div. 718, 137 N. Y. Supp. 595, cited by defendant's counsel. Here, as already shown, we have no such a situation. The statement contains a general reference to and description of the nature of the labor performed and materials furnished, and it is sufficient in its details to give the necessary information to any one who may have an interest in the subject. As was said in the prevailing opinion in Toop v. Smith, supra, at pages 287 and 288, of 181 N. Y., at page 1114 of 73 N. E.:

The "statement need not necessarily be a specific bill of particulars, but there must be such a general reference to the kind and amount of materials and labor furnished, or to be furnished as to advise those who may have a legal interest in the subject of the character and extent of the demand upon which the claim is based. In other words, there must be a substantial compliance with the requisites of the statute."

Applying the rule so laid down in the foregoing cases, it is manifest that the plaintiff's notice of lien was sufficient. My conclusion is that the plaintiff is entitled to judgment as prayed for in the complaint, with costs. If the parties desire to submit requests for findings in conformity with the views above expressed in place of those already submitted, they may do so within five days after the publication of this opinion. The new requests should be left with the clerk, who on application will return the old ones to counsel, and should be accompanied by proof of service on the other side. Unless new proposed findings are presented, with proof of service, within the time above mentioned, I will pass ·on those already submitted.